**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| In re MICHAEL WOLF, | ) | No. 18-cv-07953 |
| Debtor. | ) | |
| ------------------------------------------------ | ) | Consolidated Cases: |
| N. NEVILLE REID, not individually, but solely in his capacity as Chapter 7 Trustee of the bankruptcy estate of Michael A. Wolf, et al., | ) | Nos. 18 C 07952, 18 C 07953, 19 C 01978, 19 C 08154, and 19 C 08299 |
| Plaintiffs-Appellees, | ) | Judge John J. Tharp, Jr. |
| v. | ) | (Bankr. No. 14 B 27066) (Adv. Proc. 16 AP 00066) |
| SCOTT WOLF, MICHAEL WOLF, et al., | ) | BANKRUPTCY APPEAL under 28 U.S.C. §158(a) |
| Defendants-Appellants. | ) | |

## APPELLANT/DEFENDANT SCOTT WOLF'S FED. R. BANKR. P. 8022 MOTION FOR REHEARING / RECONSIDERATION

Now Comes Appellant/Defendant, Scott Wolf ("Scott"), *pro se*, and pursuant to Rules 8013 and 8022 of the Federal Rules of Bankruptcy Procedure, hereby moves this Honorable Court ("This Motion") for rehearing and reconsideration of its Memorandum Opinion and Order (Doc. 38, "Opinion"), its Minute Order (Doc. 37) and its Judgment Order (Doc. 39), all entered on September 30, 2022. In support of This Motion, the movant urges upon the Court reconsideration of the following errors of fact and law, and states as follows:

1

**Introduction**

In its Opinion, this Court correctly cured multiple errors of fact and law made by the Bankruptcy Court in its Memorandum Opinion dated November 19, 2018[1].

Specifically relevant to This Motion is this Court's now-corrected analysis of the marital property division between Michael and Elizabeth Wolf. The ***only*** property that made its way into the bankruptcy estate upon filing via 11 U.S. Code § 541(a) was Michael's ***contingent*** interest in all martial property. Since all marital property – the entire marital estate – was awarded to Elizabeth, the bankruptcy estate's contingent interest simply vanished – leaving the bankruptcy estate without any marital property (or any property). Utilizing this corrected analysis of the marital property division, this Court correctly found error with the Trustee's corporate waste claim, *i.e.,* Transfer No. 3. (Opinion pp. 17, 21)

However, this Court made a manifest error of law when it did not conduct a proper legal analysis – and instead ignored controlling precedent – with regards to the marital property division's effect on claims brought under sections 544(b) and 548 of The Bankruptcy Code (*i.e.,* Transfers Nos. 1 and 2). Since all property alleged and described to have been fraudulently transferred would not have become property of the bankruptcy estate if said property wasn't transferred, all causes of action under sections 544(b) and 548 fail as a matter of law.

---

[1] 16-ap-00066, ECF No. 654.

## Motion for Rehearing Legal Standard

"A motion for rehearing under Fed. R. Bankr. P. 8022 is the bankruptcy counterpart to Federal Rule of Civil Procedure 59(a) and authorizes the district court to correct "manifest errors of law or misapprehensions of fact." *Sharif v. Fox (In re Sharif)*, Case No. 15-cv-10694 (N.D. Ill. Sep. 28, 2017) (citing *In re Dvorkin Holdings*, 2016 WL 1644323, at *2 (N.D. Ill. 2016)).

"[W]hen a district court is acting as an appellate court in a bankruptcy case, Bankruptcy Rule [8022] provides the sole mechanism for filing a motion for rehearing." *United States DOJ v. Hudson*, No. 13-cv-1721, 2009 U.S. Dist. LEXIS 130261, *2, n.4 (N.D.N.Y 2009) (internal citations omitted).

Rule 8022 provides that a motion for rehearing "must state with particularity each of point of law or fact that the movant believes the district court or BAP has overlooked or misapprehended and must argue in support of the motion." *See* Fed. R. Bankr. P. 8022. Although Rule 8022 does not state a standard by which a court determines whether a rehearing is warranted, courts have stated that the standard is simply whether the Court would have reached a different result had it been aware of its mistaken use of facts or law. *Coleman v. Barclays Capital, PLC (In re Coleman)*, No. 15-cv-569, 2015 U.S. Dist. LEXIS 153844 (E.D. La. Nov. 10, 2015).

"A 'manifest error' occurs when the district court commits a 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Burritt v.*

*Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015) (quoting *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000)). Motions to reconsider are granted in cases of manifest error of law. *Abcarian v. McDonald*, 617 F.3d 931, 943 (7th Cir. 2010).

This Motion asserts sufficient points of fact and law that this Court overlooked and/or misapprehended to warrant this Court vacating its Memorandum Opinion and Judgment Order. Particularly, this Court would have reached a different result with respect to claims brought under sections 544(b) and 548, had it correctly applied controlling legal precedent.

<u>**Summary of Argument and Mistakes of Fact and/or Law**</u>

**I.      Transfer No. 1 | (Mistakes of Fact and Law, Opinion pp. 22-23)**

In its Opinion, this Court describes Transfer No. 1 as the causes of action related to the transfer of the MMQB Business from Zig-Zag Corp. to ZZC, Inc. These causes of action utilize the Illinois' Uniform Fraudulent Transfer Act, incorporated by 11 U.S.C. § 544(b). (Opinion pp. 3, 8-9)

When analyzing these causes of action given the corrected marital property division analysis, this Court made several mistakes of fact and law.

First, this Court factually misunderstood Scott's argument, believing his argument to be that the property alleged to have been fraudulently transferred needed to be property of the debtor at the time of the bankruptcy filing. But - this is not Scott's argument, rather Scott's argument is that the property alleged to have been

4

fraudulently transferred needed *to become* property of the debtor at the time of the bankruptcy filing, *if the alleged fraudulent transfer had not occurred*.

Second, this Court ignored all controlling precedent, law and caselaw related to alleged fraudulent transfers under the IUFTA, which does not allow for the avoidance of alleged transfers – if the property that was transferred would still have been unavailable to the creditor (or the Trustee in this instance) – if the transfer had not occurred. When these mistakes of law are cured, and the proper legal analysis and precedent is applied, this Court must find in favor of Scott, and find error with every claim relying on the IUFTA via 544(b).

Illinois law requires that only those who **would have benefited** from property that was transferred – if it hadn't been transferred – may bring a claim under the IUFTA. Here, if the MMQB Business had not been transferred from Zig-Zag to ZZC, it would still have been out of reach to Michael's creditors (and the Trustee), as Elizabeth gained a 100% interest in Zig-Zag in 2013 (via the divorce), before any creditor (or the Trustee) established any legal right to said property (which only would have occurred via the bankruptcy petition filing).

Further, the *clever* reverse-veil piercing / alter ego *construction* ("Alter Ego Operation") is dubious – because even if the MMQB Business was treated instead as Michael's personal property – it still would have become property of the marital estate **before** any creditor (or the Trustee) had a right to said property.

If the transfer of the MMQB Business had not occurred, it would still have been property of Zig-Zag, or under the Alter Ego Operation, it would have been property of Michael, subject to then becoming directly part of the marital estate. Either way, the MMQB Business (or Zig-Zag) would not have become property of the bankruptcy estate, even if no transfer occurred.

## II. Transfer No. 2 | (Mistakes of Fact and Law, Opinion pp. 22)

In its Opinion, this Court describes Transfer No. 2 as the causes of action related to the transfer of Michael's 51% interest in ZZC to Scott, occurring sometime after 2012 (but before the filing of the bankruptcy petition). These claims utilize the IUFTA, as well as 11 U.S.C. § 548. (Opinion pp. 3, 9)

Like with Transfer No. 1, relevant law requires that all IUFTA claims fail. If Michael had not transferred this 51% interest in ZZC to Scott, the interest would have become part of the marital estate. Since the entire marital estate was awarded to Elizabeth (and nothing was awarded to Michael), this interest would therefore remain out of reach of Michael's creditors (and the Trustee).

Further, with regards to section 548, this Court failed to recognize controlling Supreme Court precedent. Since section 548 allows the trustee to avoid the transfer "of an interest of the debtor in property", this Court opined that Michael's 51% interest in ZZC was an interest of the debtor in property at the time of its transfer (sometime after 2012 and before the bankruptcy filing). (Opinion p. 16)

However, the Supreme Court has defined "an interest of the debtor in property", within the context of an avoidance action, to only mean "property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier v. IRS*, 496 U.S. 53, 58, 59 n.3, 65, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990).

Since Michael's 51% interest in ZZC was not awarded to him, it would not have become property of the bankruptcy estate. Instead, said property would have fully passed to Elizabeth as part of the full marital estate award to her. The bankruptcy estate's contingent interest would never have ripened into ownership.

## <u>Argument</u>

All of the transferred property at issue in these proceedings was acquired by Michael (or by Zig-Zag / Michael via the Alter Ego Operation) subsequent to his marriage in 1975. As such, all property interests that Michael may of had became marital property (and part of the marital estate), upon Elizabeth filing for a dissolution of their marriage in December of 2013. (Opinion p. 20)

Property that Michael had already transferred prior to this date, of course, did not become part of the marital estate in December of 2013 – **but if Michael had not transferred it** – then it would have become marital estate property.

Simply put, property that is alleged to have been fraudulently transferred – if it had not been transferred – would only have become part of the marital estate, and

Elizabeth's 100% interest in said property would have prevented it from ever becoming part of the bankruptcy estate. The bankruptcy estate's contingent interest in any marital property **vanished** when the entire marital estate was awarded to Elizabeth, with **nothing** being awarded to Michael.

## I.     IUFTA via Section 544(b)

All causes of action under the IUFTA via 544(b) fail as a matter of law, as all of the alleged property that was transferred would have become marital property if it wasn't transferred, and thus would be unavailable to creditors.

Under Illinois controlling precedent, a creditor (or in this case the Trustee via 544) may only avoid an alleged fraudulent transfer via the IUFTA if said creditor **would have been entitled** to the transferred property – **if the property hadn't been transferred**. Section 544(a) only confers on trustees and debtors in possession the status of a hypothetical perfected lien creditor with priority over all unperfected security interests, along with the power to avoid liens that are defective under applicable law, **as of the date of the bankruptcy petition**. *In re Thorpe*, 569 B.R. 310, 315 (C.D. Ill. 2017), *aff'd*, 881 F.3d 536 (7th Cir. 2018). ("In other words, the estate has ownership rights in the debtor's former property equivalent to those that would have been enjoyed by the hypothetical lienholder, execution-holder, or bona fide purchaser who acquired her interest at the moment the estate was created. It is not that the estate actually is or was any of those things; rather, the estate can take

title ahead of other claimants if the hypothetical transferee, lienholder, or judgment creditor would be able to do so.")

There exists no transferee, lienholder, or judgment creditor – hypothetical or not – that could take said property away from the marital estate. The Trustee may only act as a judgment creditor as of the bankruptcy petition filing date in 2014.

When Elizabeth was awarded the entire marital estate, it's as if Michael died – since all of his property, and any interests in property he had or might have had, became Elizabeth's exclusive property (since nothing was awarded to Michael).

All Illinois courts, as well as all courts within the Seventh Circuit applying Illinois law, have come to the same conclusion. Recently for example in *Gecker v. Flynn (In re Emerald Casino, Inc.)*, 223 F. Supp. 3d 740, 755 (N.D. Ill. 2016):

> The court concludes only that it has jurisdiction to oversee a search for assets of the judgment debtor, which includes disputes about whether those assets are now in the hands of other persons or institutions. Because of the probate exception's bar against allocating the assets of an estate, however, it appears unlikely that this court will be able to award the property to any particular claimant. If the trust or Susan is found to have collectable property because property was transferred fraudulently to avoid the judgment as the Trustee implies (Trustee Br. 4-6), **the appropriate remedy is for the court to reinstate the property as it was before the transfer was made**, *Gayton v. Kovanda* , 368 Ill.App.3d 363, 368, 857 N.E.2d 929, 933, 306 Ill.Dec. 530 (1st Dist. 2006) ; *Gilbert Bros. Inc. v. Gilbert*, 258 Ill.App.3d 395, 400, 630 N.E.2d 189, 192–93, 196 Ill.Dec. 492 (4th Dist. 1994), **which would place it in Kevin's estate.**

As illustrated above, the plain effect of the divorce proceedings is to **(a)** cause all of Michael's property acquired after 1975 to become marital → **(b)** later ripen into Elizabeth's 100% exclusive property. Step **(a)** happens before the bankruptcy

estate has any right to any of this property, so there is no recourse for any of Michael's creditors. Elizabeth's 100% interest in all marital property prevented any property from becoming part of the bankruptcy estate. The bankruptcy estate only ever obtained a ***contingent*** interest – that later ***vanished***. Michael's creditors (and the Trustee), under Illinois law, are powerless to reach any marital property – or any property that would have become marital property – had it not been transferred.

The Seventh Circuit has also affirmed this line of reasoning in *MacDonald v. Estate of Gayton*, 469 F. 3d 1079, 1081-1082 (7th Cir. 2006):

> Assuming that Gayton's transfer of his interest in his family home was fraudulent, the UFTA would nullify the transfer and the property would be restored to the joint tenancy with right of survivorship. *See Gayton v. Kovanda*, 368 Ill.App.3d 363, ____, 306 Ill.Dec. 530, 533, 857 N.E.2d 929, 932, 2006 WL 3026035, at *4 (Oct. 25, 2006) (stating that fraudulent transfer of a joint tenant's interest in property does not sever the joint tenancy) (*citing Gilbert Bros., Inc. v. Gilbert*, 258 Ill.App.3d 395, 196 Ill.Dec. 492, 630 N.E.2d 189 (1994)). [n.1] **In other words, we would treat the property as though the fraudulent transfer had not occurred.** *Id.* (citing DeMartini v. DeMartini, 52 N.E.2d 138, 141, 385 Ill. 128, 134 (1943) (a fraudulent conveyance is void only as against creditors and the conveyance is treated as though it had not occurred)). After Gayton transferred his interest in the property to Monica and before his death, Gayton and Monica held the property as joint tenants. **Once Gayton died, his interest in the property passed to Monica** as a joint tenant through rights of survivorship.
>
> For Macdonald to reach the property for the purpose of satisfying the $357,139.89 judgment, **he must have perfected a lien on the property while Gayton held an interest in the property**. Under Illinois law, a judgment only becomes a lien on the real estate of the person against whom it is entered once the judgment is filed with the recorder of deeds in the county in which the real estate is located. Id. (citing 735 ILCS 5/12-101, *Cochran v. Cutler*, 350 N.E.2d 59, 62, 39 Ill.App.3d 602, 607 (1976)). Since Macdonald did not record a lien against the property while Gayton was alive, the property passed to Monica unencumbered by the judgment at Gayton's death. **Neither the UFTA nor the district court's entry of judgment nunc pro tunc cures Macdonald's inability to file a judgment lien while Gayton held an interest in the property**. Thus, the district court properly granted summary judgment to Monica because the UFTA affords Gayton no relief.

As illustrated by the Seventh Circuit, creditors (and the Trustee) are not entitled to any recovery of any marital estate property, as no such lien or other rights were perfected before Elizabeth gained a 100% interest in all marital property. Applying this precedent, the Trustee (or any creditor) would have had to obtain a judgment lien against Michael **before** his assets became marital property, including assets that would have become marital property if they had not been transferred. Since no such lien exists – Illinois law does not allow the Trustee to utilize the IUFTA to avoid the transfers of property, **that would remain out of reach to creditors**, when the property is treated as if the fraudulent transfer had not occurred. As such, this Court made a manifest error of law that must be corrected.

As the Illinois Supreme Court already explained, marital assets may only be encumbered pre-divorce. Obtaining a right to marital property, after the filing of a divorce, affords a creditor no protection under Illinois law. *Reinbold v. Thorpe (In re Thorpe)*, 546 B.R. 172, 177-178 (Bankr. C.D. Ill. 2016); *Kujawinski v. Kujawinski*, 71 Ill.2d 563, 574, 17 Ill.Dec. 801, 376 N.E.2d 1382(1978).

## II. Section 548

Causes of action brought under 11 U.S.C. § 548 – the Bankruptcy Code's organic fraudulent transfer provision – fail for a similar reason, as all applicable case law confirms that the section 548 definition of "an interest of the debtor in property"

11

is limited to interests in property that "would have been part of the estate had it not

been transferred before the commencement of bankruptcy proceedings."

The Fourth Circuit Court provides the best analysis of this and similar

conclusions by other Circuits, all citing Supreme Court precedent:

> Section 541 defines "property of the estate" as, *inter alia*, all "interests of the debtor
> in property." 11 U.S.C. § 541(a)(1). In turn, § 548 allows the avoidance of certain
> transfers of such "interest[s] of the debtor in property." 11 U.S.C. § 548(a)(1). By
> incorporating the language of § 541 to define what property a trustee may recover
> under his avoidance powers, § 548 plainly allows a trustee to avoid any transfer of
> property that ***would have been*** "property of the estate" prior to the transfer in
> question—as defined by § 541—even if that property is not "property of the estate"
> *now. Cf. Begier v. IRS*, 496 U.S. 53, 58, 59 n. 3, 110 S.Ct. 2258, 110 L.Ed.2d 46
> (1990) (reaching a similar conclusion about another avoidance provision, § 547 of
> the Bankruptcy Code); *Cullen Ctr. Bank & Trust v. Hensley (In re Criswell)*, 102
> F.3d 1411, 1416 (5th Cir.1997) ("These § 541 'property of the estate' definitions
> have been directly linked with the term 'interest of the debtor in property' under §
> 547(b)."). Through this incorporation, Congress made manifest its intent that § 548
> apply to all property that, absent a prepetition transfer, **would have been property
> of the estate**, wherever that property is located.
>
> This interpretation fully accords with the purpose of the Bankruptcy Code's
> avoidance provisions, which is to prevent debtors from illegitimately disposing of
> property **that should be available to their creditors**. *See Palmer & Palmer, P.C.
> v. U.S. Tr. (In re Hargis)*, 887 F.2d 77, 79 (5th Cir.1989) (avoidance provisions
> "protect!] the rights of creditors **via protection of the bankruptcy estate**")…

*French v. Liebmann (In re French)*, 440 F.3d 145, 151-152 (4th Cir. 2006),
*cert. denied*, 549 U.S. 815 (2006) (emphasis added).

Since Michael's 51% interest in ZZC would not have become property of the

bankruptcy estate had it not been transferred – being instead part of the full marital

estate award to Elizbeth – this interest is not "an interest of debtor in property" for

purposes of Section 548, according to the Supreme Court. As such, this Court made

a manifest error of law in not finding error with the section 548 claims.

Put another way – **there is no bankruptcy estate to protect**.

## III.    The Supreme Court Specifically Prohibits the Trustee's Action

Any and all causes of actions to set aside transfers or transactions pertaining to any property that would be unavailable to any creditor must fail as a matter of law, and would run afoul of the Supreme Court's ruling in *Lewis v. Mfrs. Nat'l Bank of Detroit*, 364 U.S. 603, 609, 81 S.Ct. 347, 5 L.Ed.2d 323 (1961) ("The construction of §70c which petitioner urges **would give the trustee power to set aside transactions which no creditor could void and which injured no creditor**. That construction would enrich unsecured creditors at the expense of secured creditors, creating a windfall merely by reason of the happenstance of bankruptcy."). None of the alleged transfers injured a creditor. The Trustee can't set aside any of the alleged transactions – as the Trustee would not be entitled to said property even if the transfers had not occurred, both under applicable state and federal law.

## Conclusion

This Court, while correctly interpretating the marital property division, made multiple manifest errors of law (and an error of fact) in its analysis of the effect said property division has on all of the causes of action related to Transfers No. 1 and 2.

All causes of action under the IUFTA (via section 544) and under section 548 must fail, as Elizabeth's 100% marital estate award preempts any recovery by any creditor (and therefore the Trustee), at all, in any circumstance.

This is the **only permissible outcome**, **when applying all applicable case law**. There exists no case law, at all, allowing a creditor (or the Trustee) to avoid and recover a fraudulent transfer of property that said creditor (or trustee) would otherwise not have been entitled to, even if the transfer hadn't occurred.

This case is and has always been simple. Since the marital estate, in its entirety, was awarded to the non-debtor spouse, and the debtor possessed no non-marital property, this is a no-asset bankruptcy case.

There is not, and there has never been any property in the bankruptcy estate – and there are no causes of action – that wouldn't fail as a matter of law – to allow any marital property to become property of the bankruptcy estate.

That is the only logical conclusion: all property at issue is and/or would have been marital property if it had not been transferred, leaving the Trustee and other creditors without recourse, as expressly endorsed by the Supreme Court in *Lewis*.

It defies logic that a transaction could be considered fraudulent to a party that is not (and wouldn't have been) entitled to any of the property involved in the transaction. All of the alleged transfers described by the Trustee, do not prejudice him (or creditors) in anyway, as the marital property division is **always** standing in the way. This Court must read its own quoted passage again on page 15 of its Opinion: "An avoiding power is the power of the trustee to undo certain voluntary or involuntary transfers of the debtor's interests in property **to bring the property**

**back** into the bankruptcy estate for distribution purposes." The Trustee isn't attempting to bring property **back**. Said property would never have belonged to the bankruptcy estate anyway – no matter what.

WHEREFORE, Scott respectfully requests that this Court (a) grant Scott's Motion for Rehearing by vacating its prior Opinion and related judgments and entering an opinion and judgment order finding that the bankruptcy court erred in granting relief with respect to all causes of action related to Transfers No. 1 and 2, and therefore reversing the entire judgment against Scott (and all of his related entities), and (b) such other relief as may be equitable and just. Scott reserves the right to appeal all issues to the Seventh Circuit, including those that have not been addressed here.

Dated: October 14, 2022

Respectfully Submitted,

Prepared By:

Scott Wolf (304-769-9828)
scottwolf.0330@gmail.com
320 Central Avenue, Unit 141
Sarasota, Florida 34236

/s/Scott Wolf
Scott Wolf, *pro se*
320 Central Avenue, Unit 141
Sarasota, Florida 34236
304-769-9828
scottwolf.0330@gmail.com

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

This document complies with the type-volume limit of Fed. R. Bankr. P. 8022(b)(1) because, excluding the parts of the document exempted by Fed. R. Bankr. P. 8015(g) and F.R.App.P. 32(f):

[ x    ]        this document contains **3,887** words, **or**

[     ]        this brief uses a monospaced typeface and contains _____ lines of text.

This document complies with the typeface requirements of Fed. R. Bankr. P. 8022(b), 8013(f)(1) and (2), F.R.App.P. 27(d)(1)(E) and 32(a)(5) and the type-style requirements of F.R.App.P. 32(a)(6) because:

[ x    ]        this document has been prepared in a proportionally spaced typeface using **Microsoft Word** in **14-point Times New Roman**, **or**

[     ]        this brief has been prepared in a monospaced typeface using

_____ with _____.

Dated: October 14, 2022

Prepared By:

Scott Wolf (304-769-9828)
scottwolf.0330@gmail.com
320 Central Avenue, Unit 141
Sarasota, Florida 34236

I certify the above,

/s/Scott Wolf
Scott Wolf, *pro se*
320 Central Avenue, Unit 141
Sarasota, Florida 34236
304-769-9828
scottwolf.0330@gmail.com

# <u>CERTIFICATE OF SERVICE</u>

I, Scott Wolf, hereby certify that I caused a true and correct copy of the foregoing *APPELLANT/DEFENDANT SCOTT WOLF'S FED. R. BANKR. P. 8022 MOTION FOR REHEARING / RECONSIDERATION*, and the documents referred to therein, to be served on the parties listed below via third-party commercial carrier and/or mail, and/or via email, and/or via fax, as well as electronically via the Court's CM/ECF system (all as indicated below on the service list), on the 14th day of October, 2022.

### SERVICE LIST

via ELECTRONIC MAIL (and via CM/ECF where noted):

| | | |
|---|---|---|
| N. Neville Reid | CM/ECF | nreid@foxswibel.com |
| Daniel Patrick Dawson | CM/ECF | adrag@nisen.com, ddawson@nisen.com |
| Catherine L. Steege | CM/ECF | docketing@jenner.com |
| | | csteege@jenner.com |
| Faye B. Feinstein | CM/ECF | faye.feinstein@quarles.com |
| Hailey Ann Varner | CM/ECF | HVarner@perkinscoie.com |
| Travis Jon Eliason | CM/ECF | Travis.Eliason@quarles.com |
| Holly A. Harrison | CM/ECF | hollyharrison@hlawllc.com |
| Jason Fitterer | CM/ECF | JasonFitterer@hlawllc.com |
| | | |
| Gordon Elliot Gouveia | | ggouveia@foxrothschild.com |
| Christina M Sanfelippo | | csanfelippo@cozen.com |
| Robert Michael Fishman | | rfishman@cozen.com |
| Michael Wolf, Peter Wolf | | wolfegalusa@gmail.com |
| United States Trustee | | pat.s.layng@usdoj.gov |
| U.S. Bankruptcy Court, Clerk | | ilnb_appeals@ilnb.uscourts.gov |

Dated: October 14, 2022

Signed,

/s/Scott Wolf
Scott Wolf, *pro se*
320 Central Avenue, Unit 141
Sarasota, Florida 34236
304-769-9828
scottwolf.0330@gmail.com